We're pleased, as always, to be conducting a sitting here in the Western District of Pennsylvania. For me, that is always a full home week. I'm coming over, actually, in the middle of this sitting because Judge Nygaard and I are joined by Judge William Stafford of the Northern District of Florida. The Third Circuit has, for some time, been plagued by vacancies and, at the same time, by a rising caseload, none of which makes the job any of us, and we are indebted to our visiting judges, those district judges from within the Third Circuit who help us out on a regular basis, and good friends like Judge Stafford who, from time to time, come from bombier crimes like Tallahassee and Pensacola to the former Chief Judge of the Northern District of Florida, also a former United States Attorney down there, and probably Sharon, Pennsylvania's most prominent citizen. He's actually an old Pennsylvania boy, so this is not unfamiliar territory. Bill, we thank you very much for this. We've got a good part of the Stafford family, for which we're grateful. Good to be home. Thank you, sir. So we will call the first matter for the morning, In Re Carco Electronics. Counsel? Mr. Snyder? Good morning. May it please the Court, George Snyder on behalf of the appellant, Ideal Arrowsmith. We ask that we be able to reserve three minutes for rebuttal. Ma'am? The collateral order that is the case before this Court arises from a bankruptcy court order that compels the disclosure of appellant's most valuable proprietary and private trade secrets to the president of its sole worldwide competitor, who conceitedly has the knowledge, training, and understanding and ability to comprehend those trade secrets, including the source code, computer source code that's attended to those trade secrets. We understand that the Court has requested that we direct our comments this morning to this Court's jurisdiction, and so therefore we rely upon our papers for the merits, and I would rely The panel has asked that counsel direct their argument solely to the jurisdiction. Thank you, Your Honor. This order falls within the narrowly defined collateral order doctrine exception to the general bar against the interlocutory review of a discovery-related order. Firstly, because there is nothing further that the lower court is willing or likely would be able to do in review of this order. And by that I mean that the underlying protective order that was entered at the instance of Applee was entered on July 12th of 2006. We specifically sought a rehearing and reconsideration of that order, and that was denied by the Subsequent to the entry of that August order, we took an appeal to the district court, and of course the district court did find jurisdiction to hear the matter, although ultimately agreed to affirm the underlying order. But through the course of the remainder of the case in the bankruptcy court, numerous efforts were made by Applee's to seek discovery that would have the effect of enforcing that order, which ultimately led us to seek a stay from this court, and a separate panel of this court indeed granted a stay of discovery into trade secret matters. And so as we're presently before the court, there has been no ongoing discovery related to trade secrets, but we believe that the first element of the collateral doctrine test established by the Cohen case has been squarely met. Secondly, this matter is of monumental importance to the appellant. What is at issue here is an attempt to discover appellant's trade secrets, and that is of primary and fundamental importance to You got relief from the bankruptcy court, right? I don't believe we did, your honor. You don't believe you got any relief in the form of a protective order? No, your honor, and the reason I say that is that Just what was the bankruptcy judge dealing with then in the issue of his memorandum of order? Well, firstly, the bankruptcy judge was dealing with a motion filed by our adversary seeking a protective order that, I guess in a way, they sought blanket coverage both for their own trade secrets, but also for trade secrets relative to my client, Ideal Aerosmith. The reason I disagree with your honor is that the greatest danger to my client is having to transmit these trade secrets to its sole worldwide competitor. Although this is a bit of an extreme, there would be less harm in posting it on the internet than allowing Mr. Michael Swamp to have access to these trade secrets. And so I don't believe that the court afforded my client any relief. And beyond that, your honor, our fundamental contention on the merits is that the court below did not conduct the hearing that this court has required under the Pansy line of authority. And had that court allowed a full evidentiary hearing, we would have been allowed to explore the details of Mr. Swamp's knowledge and capability and so forth, and we believe that that would have resulted in a more appropriate form of The rights with respect to trade secrets have been afforded great deference and recognition, I think, of the importance of those rights vis-a-vis an owner of such property, as evidenced by the enactment almost universally across the United States, but certainly within Pennsylvania, the Uniform Trade Secrets Act that is focused on identifying first those items of property that are indeed trade secrets and then affording protection to those. And there's a line of authority within the Pennsylvania state courts that runs parallel to this court's line of cases that recognizes the fundamental importance of trade secrets. In fact, the Superior Court of Pennsylvania specifically acknowledged the public policy associated with the protection and maintenance of trade secrets. In reviewing this importance element under the Cohen test, the Supreme Court has suggested that this is not a bright line analysis, although I would submit to you that this court has indeed identified a bright line, and that is that this court has consistently found that discovery related to trade secrets and fundamental claims of privilege do fall within that narrow band of cases that are appropriate for collateral order review. But assuming that you didn't wish to adopt that as a bright line, the Supreme Court instructs us to balance the harms of the loss, if you will, if the trade secrets are not protected. Mr. Schneider, I would like to return to the issue of the existence, well known, of protective relief. What do you contend that Judge Markovitz, I guess July 12, 2006, ordered that he denominate protective relief does exist? I'm sorry, Your Honor, I'm not sure I totally follow your question. Well, you said you were afforded no protective relief. I did say that, Your Honor, relating to trade secrets. The order categorizes different kinds of information into confidential and highly confidential. And I will acknowledge that as to that confidential realm, it does provide some measure of protection. It's really focused on the most- I understand it's not as much as you wanted, but it's protective. As it relates to the most highly confidential information, where I view the order as failing, fundamentally failing. Is it the information and the nature of that information about which you complain, or is it who has access to that information, pursuant to the procedures established by the Bank of New York that you have? It's the latter, Your Honor. And in fact, I think- Then there was protective relief granted. There was substantial protective relief granted. You just don't like all of the protections. Isn't that the case? Well, that's what my adversary argues. But I disagree, Your Honor, because the most fundamental protection- Well, words mean something objectively. And apparently, it would, I'm sure, come as a profound surprise to Judge Markovits to discover that what he denominated as protective order and the relief he grants, which he envisioned as protective relief, is not regarded as such. And I suspect that it would come as just as much of a surprise to Judge McBury, who then gave his imprimatur to the bankruptcy courts. Well, in light of the proceedings that have occurred subsequent to these appeals, I don't think that it would come as a surprise. In fact, we have consistently argued that what we should have had was a proper pansy hearing to arrive at a more effective and a more appropriate protective order. But that goes to the nature of the procedure that you're talking about, not the nature of the relief, right? Well, I believe that having concluded an appropriate procedure, the court would have, without doubt, been led to a different form of relief. In fact, we had a two-day hearing before- How does that affect the appealability of this order, which is what we're limited to right now? I mean, the order says what the order says. We're not dealing with some hypothetical order which you might conjure up had the court followed a different procedural route than what it did. True, Your Honor, although to find collateral order jurisdiction, the case law established in this circuit has simply identified that the discovery order at issue must relate to, in this circumstance, trade secrets. Let me ask you, to what extent is your position rise or fall on Smith v. Davis? Well, Smith v. Bick is a fundamentally profound decision, but that is not the only decision that supports- Gee, I thought the Third Circuit issued nothing but fundamentally profound decisions. There's an enormous redundancy there. Indeed, it is. They say in the South. That's right. Indeed, it is, Your Honor. But I would also cite, Your Honor, to the Ford Motor decision, which admittedly deals with privilege, but goes right through this same analysis. Beyond that, Bates v. Allstate, wherein following the digital equipment and the Cunningham Supreme Court decisions, this court declined to extend the collateral order doctrine to important categories of documents, but not those that rise to the level of trade secrets and or fundamental claims to privilege. And consistently thereafter, this court has continued to reaffirm that trade secrets and  If you were to take jurisdiction of this case, which, first of all, Bick and Smith have been, we virtually stand alone in allowing an appeal from such a discovery order, you are asking for an expansion of that to one in which the person given the protective order is simply not satisfied with it. What gates could we possibly build into granting you appeal status that would prevent anyone who is dissatisfied with such an order from taking an appeal? Or indeed, would the gates remain open? What distinguishes yours from the next guy coming along who just doesn't like the order? I think this court has already established that gate, Your Honor, and that's the Pansy case. And what's missing in this instance is that the lower courts failed to apply the law that has already been established by this circuit. What does Pansy do for you? I truly don't understand your argument. Your Honor, what Pansy does for us is allow And I ask that because I don't think you really, at least for me, answered Judge Nygaard's question. Well, what Pansy allows, and I guess it's back to the commentary that you and I had about process. It allows fundamental due process in this area because it requires the lower court to receive What does fundamental due process and the underlying procedure have to do with the appealability of the order that was issued by Judge McBury effectively affirming the protective order issued by Judge McBury? Well, I start with the premise that we're dealing with an order related to trade secrets. And I think that that satisfies the collateral order doctrine. Your Honor has said to me, but you already have an order, to which I retort, we have an order that's defective on its face because the lower court did not apply the standards that have been set forth by this court for the presentation of evidence. For example, the only evidence, if you call it that, as to Mr. Swamp's qualifications to see this source code is contained in a footnote to the motion seeking the protective order. We would have fundamentally, at least like the opportunity to engage in discovery, take his deposition, present evidence to Judge Markovitz as to the precise harms that concerned us. All right. Mr. Schneider, I think we'll have you back on rebuttal then as we have gone a few minutes  Thank you, Your Honor. May it please the court, Leland Shermer for Appellee Acutronic USA, Inc. There are three main reasons why this court does not have jurisdiction over this appeal. First, the protective order that was entered by Judge Markovitz does provide substantial relief. The essential contention of the appellant is that it does not provide enough relief. And in this circumstance, given that the dispute about the protective order is really a matter of degree, that requires that this court not find the issue in this case to be sufficiently important. Under BIC, do we have to have a 100% to 0%? Or will there be, under that decision, a bit of degree measuring as to the relief granted? Your Honor, I think that under BIC, the facts were that there was a situation where there was no protection that was going to be provided. And the party claiming trade secret rights in that case had no opportunity to address the matter other than through an immediate appeal. Now, the BIC decision, as the court has alluded, has something of a stand-alone nature among the courts of appeal. And it's a decision from the 80s that I think is a bit out of step with recent Supreme Court decisions. Well, we're bound by it. And I understand you argued that in your brief, that it's been effectively overruled. Please explain to me how that's... Your Honor, the theme of the Supreme Court precedent since BIC has established certain undeniable strands of law. Number one, collateral orders to be appealable must be categorized in broad categories. Number two, particularly with the Will v. Halleck case, there's a requirement that the issue of importance be ascertained. And importance in Supreme Court collateral order jurisprudence has been an issue deemed to be fundamentally rooted in important values, typically of constitutional dimension or important statutory grounds. The issues that were at stake in Smith v. BIC were really specific to the parties in that case and specific to the posture of that case. Why isn't it enough, though, as Judge Nygaard has suggested in his last question, that in the case of Smith v. BIC, there should be relief granted at the district court level? Why can't our Smith v. BIC precedent be cabined, if you will, to those situations? It can, Your Honor. Doesn't that accomplish the same thing? It can, Your Honor. And I think you see... Isn't it a neater doctrinal way to resolve this issue of appealability than trying to effectively rule the room? Your Honor, it can be cabined in that fashion, and it ought to be. The Bacher case from this court from about the year 2000 seemed to take a substantial step in that direction. It was the first of several that seemingly drew distinctions about BIC. And in that case, the court distinguished what was termed sensitive information, information about settlements in other cases. But Bacher was an insurance case, an insurance coverage case, wasn't it? Correct, correct. Didn't have much in common with this matter, except, interestingly, Judge Mansman, who wrote the Smith v. BIC opinion, was on the Bacher panel. Correct, Your Honor. I think it has a certain similarity, although it's not exactly the same case. And that similarity is that the court was dealing with whether or not the failure to protect sensitive information in any manner justified an immediate collateral appeal. And the court ultimately drew the line, I think, drawing upon some intervening Supreme Court precedent, that the collateral order is an extremely narrow doctrine and needs to be kept that way. You know, Your Honor, in the Halleck case, the Supreme Court made a statement that I think is important for any lawyer and judge to be careful about. It made the comment that we have not mentioned applying the collateral order doctrine recently without emphasizing its modest scope. And we have meant what we have said. Although the court has been asked many times to expand the small class of collaterally appealable orders, we have instead kept it narrow and selective in its membership. I think when the Supreme Court of the United States tells all of us in this field that we have meant what we said, it's an emphasis worth noting. And I think that that theme has developed particularly over recent years. Your Honor, you asked about what happens if a collateral appeal is allowed in this case. How do you confine it somehow to keep from allowing every dispute about a protective order to end up in front of an appellate court? And there's no easy way to do that. That's part of the problem. That's why the issues in this case are not sufficiently important in the collateral order sense. In addition, Your Honors, we have the requirement that the issues be completely separable from the merits of the underlying matter. In this case, the appellant filed a motion seeking reconsideration before the bankruptcy court. And in support of the motion for reconsideration, it submitted an affidavit from the one person within IDEAL who was permitted under this protective order to see Accutronics' highly confidential information. That affidavit can be found at JA 1292 to 1297. And if you read the affidavit, the affidavit in effect tracks the arguments on the merits of this case. The significance of that affidavit is that in this very case, in order to try to get the relief IDEAL claims it's entitled to, it has argued the merits of the underlying contempt petition, albeit unsuccessfully. But I think that evidence demonstrates indisputably that you cannot separate the merits in this particular case. That's another reason not to find a collateral order. In addition, I think that it's important that you look at some of the recent tenor of the Supreme Court cases when they talk about importance and effective unreviewability. The Will v. Halle case, when it talked about this other prong of effective unreviewability, made it clear that what has to qualify in order for an order to be effectively unreviewable at the end of the case is that there be a substantial public interest, a deeply rooted public interest of a high order of magnitude that would be lost by allowing the case to be heard only at the end. Here, what IDEAL claims is a purely private, personal interest in protecting trade secrets. And even at that, the order does direct the recipients of the trade secret information that the use to which they can put this information is quite limited. Number one, it can only be for purposes of this underlying contempt proceeding. And number two, as to highly confidential information, it must reside at all times at counsel's office, and the persons entitled to review this information must physically go to counsel's office to review it. So in this setting, the issues that IDEAL claims are of concern to it are not of the type that the Supreme Court has articulated would be effectively unreviewable in that a review at the end would prevent or would interfere with important public policy considerations. Mr. Chairman, what is your understanding of your adversary's pansy argument, and what is your response? The pansy argument would be one that would be appropriate to discuss on the merits. I don't know that it has a jurisdictional dimension, and I too have had some difficulty formulating a response because I don't understand its application to jurisdiction. It's a merits-based argument, so it's hard for us to address that. Your Honors, the bottom line on this appeal is that there are very selective cases in which an interlocutory appeal is both justified and makes sense. The tenor has been to insist that those cases be ones where public interest matters of a high order of magnitude be at stake, and respectfully, this case simply doesn't have such an issue. Thank you, Your Honors. Thank you. Mr. Schneider, rebuttal. Thank you, Your Honor. It simply cannot be the rule of law that just because a protective order was entered, it could never be subject to review. And my connection to pansy is simply that, and I recognize it is a merits-based argument, but the issue before this Court is may it take up jurisdiction of this appeal under the collateral order doctrine. Prior cases of this Court have consistently reaffirmed the existence of collateral order jurisdiction in those instances where trade secrets and fundamental areas of privilege are to be protected. And the counter to my request for jurisdiction is, well, you already have an order. Well, any old order cannot suffice. And this Court has very clearly established the process that the lower courts are to follow in conducting a proper proceeding for the entry of an order. And to Judge Nygaard's question, I do not believe that a standard such as this would open the floodgates. Conceivably, this may be the only case where we have such a paucity of a record in support of the entry of an order that fundamentally it must be available for review. I might also add that to the extent that this Court is disinclined to find jurisdiction on the collateral order doctrine basis, of course, it may fall back to its mandamus powers under the All Writs Act. May I inquire, what kind of order would you want, either from the bankruptcy court or the district judge or from this panel? What would the order look like, counsel? Judge Stafford, we requested an order that would engage a neutral evaluator. We agree that our adversary is entitled to have some examination made of this source code. Their fundamental contention is that Ideal took something that they purchased and incorporated it into its new product. We recognize that that is a fundamental issue in this case and that they're allowed some examination of it. We have been able to locate a professor from Carnegie Mellon University who has advised that, in fact, he or many others just like him could conduct this analysis, both of the hardware and of the software that's incorporated into these two products. And could issue an expert's report as to the information that's contained therein and whether or not there is any sort of cross-pollination. So that would be our first request for relief. And there's a lot of cases cited in our brief on the merits where information has been prevented from being disclosed to presidents and chief engineers of companies because once learned, it can't be unlearned. But even our own form protective order in the district court dealing with these trade secrets has an attorney's eyes only categorization that's absent from this. The fundamental harm in this case is that Ideal's trade secrets are being delivered to its sole competitor and to an engineer within that firm who has the ability to fully understand it. I see my time has elapsed, so I would respectfully request that this court reverse the order of the district court. And I thank you very much. Thank you very much, counsel. We thank both sides for a good set of briefs and for their full advocacy here this morning. We'll take a matter under advisement.